UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT MILLER,                              )
                                            )
                        Petitioner,         )      11 C 1495
                                            )
            vs.                             )      Judge Feinerman
                                            )
RICK HARRINGTON, Warden,                    )
                                            )
                        Respondent.         )

## <u>Memorandum Opinion and Order</u>

Petitioner Robert Miller, who is serving concurrent natural life and 30-year terms in

Illinois state prison for the first degree murder and armed robbery of Peter Cunnings, seeks a writ

of habeas corpus under 28 U.S.C. § 2254. Doc. 1. The habeas petition is denied, and the court

declines to issue a certificate of appealability.

### Background

A federal habeas court presumes correct the factual findings made by the last state court

to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing

evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012)

("We give great deference to state court factual findings. After AEDPA, we are required to

presume a state court's account of the facts correct, and the petitioner has the burden of rebutting

the presumption of correctness by clear and convincing evidence.") (internal quotation marks

omitted); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes,* 334 F.3d 696,

704 (7th Cir. 2003). The Appellate Court of Illinois is the last state court to have adjudicated

Miller's case on the merits. *See People v. Miller*, No. 1-08-0111 (Ill. App. Dec. 15, 2009) (Doc.

1-2 at 31-44); *People v. Miller*, No. 1-00-0062 (Ill. App. May 31, 2001) (Doc. 1-2 at 22-30);

*People v. Miller*, No. 1-97-1709 (Ill. App. Feb. 25, 1999) (Doc. 1-2 at 5-20).  Miller has not

rebutted the state appellate court's factual findings at all, let alone by clear and convincing

evidence.  The following sets forth those facts as well as the procedural background of Miller's

state criminal and post-conviction proceedings.

On December 16, 1992, Miller and a man named David Nanos were drinking beer and

using cocaine in Miller's room at the Ainslie Hotel.  Doc. 1-2 at 23, 31.  At about 8:00 p.m.,

Miller told Nanos that he was going to another room at the hotel to get money to allow them to

buy more drugs.  *Id*. at 6, 23, 31.  Miller returned about twenty minutes later; according to

Nanos, Miller was "real frantic."  *Id*. at 6.  Miller informed Nanos that he had obtained $43, and

he also pulled from his pocket a foot-long souvenir baseball bat that was covered in blood.  *Id*. at

6, 23, 31.  Nanos became alarmed and left.  *Id*. at 6.  Three days later, on December 19,

Cunnings's dead body was found in a different room at the same hotel.  *Id*. at 5, 32.

Detective Ronald Koncz was assigned to the case.  *Id*. at 6.  His investigation led him to

Nanos.  *Ibid*.  Nanos was arrested, and he told Koncz about his encounter with Miller on

December 16.  *Id*. at 7.  Koncz found Miller at Cook County Jail on January 21, 1993, where he

was serving time for an unrelated misdemeanor conviction.  *Ibid*.  Koncz took Miller from Cook

County Jail to the Area Five police station for questioning, and Miller denied any involvement in

the murder.  *Ibid*.  Koncz again brought Miller to the police station for questioning on January

30, 1993.  *Ibid*.  Miller again denied involvement in the murder, but said that the last time he was

with Nanos he was "wasted" and that "if he had killed somebody, he wouldn't remember."  *Id*. at

7, 23, 32.

The manager of the Ainslie Hotel called Koncz in February 1993 after he and a

maintenance manager found a cooler containing a green hooded sweatshirt, a pair of blue jeans,

and a towel in the laundry room. *Id*. at 7. The jeans and towel were bloodstained, and serology tests later indicated that the blood was consistent with Cunnings's blood type. *Id*. at 7-8, 32. The maintenance manager testified that he had seen Miller wearing the green sweatshirt on several prior occasions. *Id*. at 7-8. On March 19, 1993, Koncz again brought Miller to the police station for questioning. *Id*. at 8, 14, 17. After admitting that the items in the cooler were his, Miller was placed under arrest. *Ibid*. Miller denied wrongdoing and requested an attorney, at which point Koncz ended the interview. *Ibid*.

At trial, Mark Webb testified that while detained at Cook County Jail with Miller, Miller told him that the police were "trying to pin the murder" on Miller. *Id*. at 8. Miller also told Webb that he had been doing cocaine with a friend and went to borrow money from another friend, and that when the second friend would not give him any money, Miller hit him on the head with a wooden object. *Ibid*. Miller told Webb that he had taken $43 from the second friend's room. *Ibid*.

Before trial, Miller filed a motion to quash his arrest pursuant to the Fourth Amendment and a motion to suppress the statements he made during his police interviews pursuant to *Miranda*; the motions were denied. *See id*. at 5-6, 13-14; Doc. 16-1 at 87-88. The jury found Miller guilty of first-degree murder and armed robbery. Doc. 16-7 at 127-129. Miller was sentenced to a term of natural life imprisonment without parole for the murder and a concurrent term of 30 years' imprisonment for the armed robbery. *Id*. at 243-245; Doc. 16-1 at 84.

Miller appealed, arguing that: (1) the evidence was insufficient to convict him of murder; (2) the trial court erred in denying his motion under *Miranda* to suppress the statements he allegedly made after invoking his right to remain silent; (3) the trial court erred by denying his motion to suppress the statements he made at the Area Five police station because he had been

unlawfully seized in violation of the Fourth Amendment when the police transported him from

Cook County Jail to Area Five for questioning; and (4) the trial court erred in sustaining certain

objections to evidence regarding Detective Koncz's in-court conduct. Doc. 16-1 at 34-91. The

state appellate court rejected Miller's arguments and affirmed. Doc. 1-2 at 5-20. Miller then

filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois. Doc. 16-2 at 9-

24. The PLA raised only Miller's Fourth Amendment claim. *Id*. at 13. The PLA was denied.

*People v. Miller*, 720 N.E.2d 1101 (Ill. 1999).

Miller then filed a *pro se* petition for relief under the Illinois Post-Conviction Hearing

Act, 725 ILCS 5/122-1 *et seq*. Doc. 16-2 at 26-30. Post-conviction proceedings in Illinois have

three stages: "In the first stage, the petition must state the gist of a constitutional claim or it will

be summarily dismissed. … At the second stage, the petitioner must make a substantial showing

of a constitutional violation to survive dismissal. Only then will the petition advance to the third

stage, an evidentiary hearing." *Davis v. Lambert*, 388 F.3d 1052, 1060 (7th Cir. 2004) (internal

quotation marks omitted). In his post-conviction petition, Miller claimed that: (1) his trial and

appellate counsel were ineffective for failing to argue that his armed robbery conviction should

have been vacated as a lesser-included offense of his murder conviction; and (2) his trial counsel

was ineffective for failing to investigate and present evidence at the suppression hearing that he

had invoked his right to counsel during police questioning, for failing to investigate and call a

woman named Montanez as an alibi witness, and for preventing him from exercising his right to

testify at trial. Doc. 16-2 at 26-30. The trial court summarily dismissed the petition at the first

stage of the post-conviction process as frivolous and without merit. *See* Doc. 1-2 at 22.

 Miller appealed, and the state appellate court affirmed in all respects but one, holding

that Miller had stated the gist of the constitutional claim that his counsel was ineffective in

preventing him from testifying at trial. *Id*. at 22-30. The case was remanded to the trial court for second-stage post-conviction review, and Miller was appointed counsel. *See id*. at 35.

Back in the trial court, post-conviction counsel filed a supplemental post-conviction petition that incorporated Miller's earlier *pro se* filings in their entirety and attached an affidavit from Miller. Doc. 16-2 at 41-59. Post-conviction counsel also filed an Illinois Supreme Court Rule 651(c) certificate stating that Ms. Montanez, the alibi witness whom Miller's trial counsel allegedly failed to investigate, had been contacted but that she was unable to provide an affidavit supporting Miller's alibi. *Id*. at 60; *see* Doc. 1-2 at 41. Although Miller was represented, he filed his own *pro se* brief in support of his petition; Miller also filed a *pro se* motion for the appointment of a new post-conviction attorney. Doc. 16-4 at 72-111; *see* Doc. 1-2 at 36.

The trial court dismissed the post-conviction petition at the second stage without conducting a third-stage evidentiary hearing. Doc. 16-3 at 41. The trial court made clear that it was considering not only the failure-to-testify component of Miller's ineffective assistance claim—which the appellate court had held sufficient to state the gist of a constitutional claim— but all of the arguments that Miller had brought on post-conviction review, and that it found all of Miller's claims to be without merit. With respect to the arguments other than the failure-to-testify component of the ineffective assistance claim, the trial court said:

> As the State pointed out[,] we began with a remand here from the Appellate Court overturning the summary dismissal of the original post-conviction petition … that was filed by Mr. Miller. They specifically stated there was one ground left, that being the right to testify ground. Case law tells us that petitions are dismissed summarily [at the first stage], not grounds, so to that extent, to the extent that the entire original petition is still here[,] I'm going to rule on the entire petition, including the grounds that the Appellate Court addressed.
>
> They did address the remaining grounds [the grounds other than the right-to-testify component of the ineffective assistance claim], as did the State, and I believe that the reasoning was convincing and accurate and compelling and I'm going to agree with them as it relates to the other grounds and we'll

move to the final ground, the ground [the right-to-testify component of the ineffective assistance claim] they [the appellate court] specifically thought required a second stage hearing. …

Doc. 16-8 at 21; *see also* Doc. 1-2 at 36.  With respect to the failure-to-testify component of the ineffective assistance claim, the court stated:

This is not, as the State points out in its motion and attache[d] exhibits, this is not the typical defendant.  This is a defendant who is filing motions, he's arguing with the judge before he even goes to trial, he's sending lists to his attorney about what he wants done, lists which do not mention an alibi, neither the woman nor her son who supposedly was there, who is no longer alive, but he's not mentioned.  This is someone who is filing lawsuits, federal lawsuits, he's suing the ASA, he's suing his lawyer, he's telling the judge in open court that he wants a fair hearing when the judge doesn't agree with him, so he's not shy by any stretch of the imagination.

He has also testified.  He testified twice in this case.  I read one of the transcripts.  I assume that the State is accurate as to the Motion to Suppress Statement also that he testified twice in this case.

\*   \*   \*

… He went back and forth with the judge on more than one court date.  He had numerous filings and he sued numerous people involved in the case.  He is alleging a conspiracy before trial.

I believe that the record in this case based on the actions of this defendant rebut the allegation in this case.  I do not believe that based on the record that I have reviewed that Mr. Miller would have stood there and listened to his lawyer say you can't testify and not testify.  Based on that I don't believe that he was duped out of testifying or that he was too scared to speak up and say that he wanted to testify.  I believe that the record rebuts the allegation and I believe specifically that's the case here because even though we are to take well-pleaded facts as true at this stage[,] these are not well-pleaded facts.

We have got a conclusory statement by the defendant that he was not allowed to testify.  I don't know what that means and I believe that it is vague because he intended it to be vague.  It's intentionally vague.  It's factually deficient.  There are no facts to support it.  It is not well-pled, it is not specific and I believe that is done by design.

And again based on the record that I've reviewed, which is very well-documented by the State's motion[,] that in this case on this record we do not need to proceed to a[] [third-stage] evidentiary hearing.  The burden is on the

> defendant at this point, he has not met that burden, so accordingly the [State's] motion to dismiss is going to be granted and defendant's post-conviction petition and all supplementary petitions are denied.

Doc. 16-8 at 21-24.

Miller made two arguments in his appeal to the Appellate Court of Illinois: (1) the trial court erred in dismissing Miller's ineffective assistance claim at the second stage because Miller had made a substantial showing that his trial counsel had refused to allow him to testify; and (2) the trial court erred in dismissing the other components of Miller's ineffective assistance claim, meaning the components other than the argument that trial counsel was ineffective because he prevented Miller from testifying, without giving him the benefit of a second-stage proceeding. Doc. 16-3 at 1-42, 91-104. The appellate court affirmed. Doc. 1-2 at 31-44.

The appellate court acknowledged that its prior post-conviction opinion had erred in purporting to reverse and remand for second-stage proceedings only the portion of Miller's post-conviction petition claiming that trial counsel was ineffective because he prevented Miller from testifying at trial; the court recognized that when a post-conviction petitioner states the gist of a constitutional claim on any ground, the case should advance to the second stage on all grounds. *Id*. at 41. That said, the appellate court held that the error was harmless because the trial court on remand had given second-stage review to all of Miller's claims—not only the failure-to-testify component of his ineffective assistance claim, but also the other components of that claim. *Id*. at 41-43. The court explained:

> [I]n ruling on the defendant's supplemental petition, the circuit court indicated that it had reviewed the record and all of the pleadings, including the defendant's pro se response to the State's motion to dismiss. In addition, the circuit court acknowledged the rule announced in [*People v.*] *Rivera*[, 763 N.E.2d 306 (Ill. 2001), which held that post-conviction claims may not be individually dismissed at the first stage of post-conviction proceedings and that a post-conviction petition containing at least one claim meeting the "gist" standard must be docketed for second-stage proceedings, even if not all of the claims are meritorious,] and expressly stated that it would rule on the entire

> original petition, which included the claims addressed by this court in the
> prior appeal.  These comments affirmatively demonstrate that the circuit court
> considered all of the claims contained in the defendant's pro se and
> supplemental petitions.  Also, contrary to the defendant's assertion, the record
> clearly indicates that the circuit court did not dismiss the pro se claims based
> on the doctrine of res judicata, … but rather based on the defendant's failure
> to make a substantial showing of a constitutional deprivation with regard to
> those claims.  Based on the record before us, we reject the defendant's
> argument that he was denied second-stage review of his pro se claims.

*Id*. at 43.

On the merits of the right-to-testify component of the ineffective assistance claim, the appellate court recognized that "[a] defendant's right to testify at trial is a fundamental constitutional right, as is his or her right to choose not to testify," and that "[b]ecause the decision of whether to testify at trial ultimately rests with the defendant, it is not one of those matters which is considered a strategic or tactical decision best left to trial counsel."  *Id*. at 38 (internal quotation marks omitted).  The court added that although "only the defendant may waive his right to testify, such a decision should be made with the advice of counsel," and that such "advice does not constitute ineffective assistance of counsel unless the evidence establishes that trial counsel refused to allow the defendant to testify."  *Id*. at 38-39.  The court continued: "At a second-stage postconviction proceeding, in order to make a substantial showing of ineffective assistance of counsel based on the deprivation of the right to testify, a defendant must allege that, when the time came for him to testify, he told his lawyer that he wanted to do so, despite advice to the contrary."  *Id*. at 39.  The court then noted that "[w]here neither the postconviction petition nor the defendant's affidavit alleges a contemporaneous assertion by the defendant of his right to testify, the record indicates that the defendant acquiesced in counsel's advice, and dismissal of a postconviction petition without an evidentiary hearing is proper."  *Ibid*. (internal quotation marks omitted).

Addressing the facts of Miller's case, the appellate court held that Miller's right-to-counsel argument did not survive second-stage review:

> Here, the supplemental petition filed by counsel on the defendant's behalf alleged only that "trial counsel refused to allow him to testify at his trial despite his repeated requests to do so." The pro se petition, which was incorporated in the supplemental petition, alleged that the defendant had "continuely [sic] expressed his desire to testify at his trial," but he was told by his trial attorney that he could not testify. The supporting affidavit attested that the defendant "told [his] trial attorney [he] wanted to testify, but was not allowed to." These vague and general statements do not indicate with any specificity the time frame during which the defendant allegedly informed his attorney that he desired to testify. Of particular significance here, none of the above allegations asserts that, when the time came for him to testify, the defendant told his lawyer that he wanted to do so. Moreover, we observe that postconviction counsel did not supplement the petition with a new affidavit containing particular statements as to when the defendant told his attorney that he intended to exercise his right to testify. In the absence of a specific allegation that the defendant made a contemporaneous assertion of his right to testify, we find that the defendant's postconviction petitions and affidavit are insufficient to present a substantial showing of ineffective assistance of counsel.

Id. at 39-40 (appellate court's alterations). As to other components of Miller's ineffective assistance claim, the appellate court held that he had forfeited them by failing to properly assert them on appeal: "[W]e note that the defendant has not argued in this appeal that his pro se failure-to-investigate claims and his claim that armed robbery is a lesser included offense of murder should not have been dismissed because he met the substantial showing standard required to advance those claims to a third-stage evidentiary hearing. Therefore, any such argument has been forfeited on review. See 210 Ill.2d R. 341(h)(7) (argument portion of brief shall contain the contentions of the appellant and the reasons therefore, with citation of the authorities and the pages of the record relied on, and points not argued are waived) …." Id. at 44.

Miller then filed a *pro se* PLA, arguing that: (1) trial counsel was ineffective in various respects, including for failing to raise or preserve arguments about the sufficiency of the

evidence, for failing to argue that his offenses were part of a "single common scheme or plan," for failing to adequately present argument regarding the supposed *Miranda* violations, for failing to investigate and subpoena alibi witnesses, and for preventing him from testifying at trial; (2) appellate counsel on direct appeal was ineffective for failing to raise or preserve claims that his trial counsel was ineffective or that his offenses were part of a single common scheme or plan; (3) appellate counsel on direct appeal was ineffective for omitting from his PLA claims that the evidence was insufficient to convict, that he was denied his *Miranda* rights, that his trial counsel failed to investigate and subpoena certain witnesses, and that a detective gave biased and prejudicial testimony at trial; (4) the trial court erred in refusing to define "reasonable doubt" in response to a jury question; (5) the evidence was insufficient to convict; (6) the trial court erred in sentencing Miller on both charges when they were part of a single common scheme or plan; (7) the trial court erred in denying his motion to suppress statements made after he had invoked his right to remain silent; (8) the trial court erred in denying his motion to quash his arrest; and (9) the trial court erred in sustaining an objection regarding evidence of a police detective's in-court conduct. Doc. 16-4 at 1-15, 118-126. The state supreme court denied the PLA. *People v. Miller*, 930 N.E.2d 413 (Ill. 2010).

Miller then filed this federal habeas petition in the Southern District of Illinois. Doc. 1. The case was transferred to this District. Doc. 6. The Warden concedes that the petition is timely. Doc. 15 at 6.

## Discussion

Fairly read, Miller's habeas petition presents three claims: (1) because removing Miller from the Cook County Jail to the Area Five police station for questioning violated the Fourth Amendment, the statements Miller gave at the station should have been suppressed; (2) because

the police violated *Miranda* by continuing to question Miller after he requested counsel and invoked his right to remain silent, the statements he allegedly gave after requesting counsel and invoking his right to remain silent should have been suppressed; and (3) trial counsel was ineffective within the meaning of the Sixth Amendment. Doc. 1.

## I.     Fourth Amendment Claim

Miller's Fourth Amendment claim is not cognizable on federal habeas review. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). A "full and fair" hearing occurs when the defendant is allowed to present his case in a proceeding that is not a "sham." *Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003). In making this inquiry, the court's "role is not to second-guess the state court on the merits of the petitioner's claim, but rather to assure [itself] that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013). A Fourth Amendment "blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment." *Miranda v. Leibach*, 394 F.3d 984, 998 (7th Cir. 2005) (internal quotation marks omitted).

Miller had the opportunity to present his Fourth Amendment claims to the state courts, and the state court proceedings were not a sham. The record reflects that the state trial court held a hearing on Miller's Fourth Amendment motion to suppress, at which Detective Koncz and Miller testified and at which counsel presented argument. *See* Doc. 1-2 at 5-6, 18; Doc. 16-1 at

87-88.  After receiving the evidence and argument, the trial court denied the motion, finding (in

the appellate court's description of the trial court's ruling) "that, because the defendant was

already incarcerated at the time that he was brought to Area Five for questioning, there was no

need to go before a judge or otherwise receive permission to transport him to the police station."

Doc. 1-2 at 16-17.  The appellate court affirmed, reasoning as follows:

> The defendant next contends that the trial court erred in denying his
> motion to quash his arrest.  According to the defendant, the police seized him
> without probable cause from his "place of residence," the Cook County Jail,
> and illegally transported him to Area Five for questioning.  The defendant
> argues that, in so doing, the police obtained allegedly incriminating statements
> from him in regards to Cunnings's murder which are the fruit of these illegal
> seizures.  In ruling on the defendant's motion, the trial court found that,
> because the defendant was already incarcerated at the time that he was
> brought to Area Five for questioning, there was no need to go before a judge
> or otherwise receive permission to transport him to the police station.
>
> The defendant's argument focuses, not on the arrest itself, but on the
> contention that his removal from jail, without probable cause, violated his
> Fourth Amendment rights to freedom from illegal seizure.  The defendant
> cites to caselaw holding that the warrantless arrest or seizure of a person in his
> home for custodial interrogation in the absence of probable cause violates
> both the Illinois Constitution and the Fourth Amendment.  Ill. Const. art. I,
> sec. 6 (1970); U.S. Const., amend. IV; Dunaway v. New York, 442 U.S. 200,
> 216 … (1979).  The defendant contends that, because he was residing in jail,
> his removal to Area Five constituted such an unreasonable seizure.
>
> The State acknowledges that a constitutional violation would have
> occurred if the defendant had been seized off the street or from his home with
> no probable cause.  While imprisonment does not entail a total loss of
> constitutional protections, an imprisoned individual does lose some
> expectations of certain rights.  See e.g. People v. Adams, 149 Ill. 2d 331, 348,
> 597 N.E.2d 574 (1992) ("offenders necessarily have reduced expectations of
> personal privacy").  The instant action is comparable to those cases where,
> after effectuating a valid arrest, the police officers were found to have the
> authority to transport the defendant to the police station and question him
> about another crime of which he might have had knowledge.  See People v.
> Fickett, 204 Ill. App. 3d 220, 226, 562 N.E.2d 238 (1990).  The defendant
> here had been validly arrested, convicted, and jailed for an unrelated
> misdemeanor; therefore, the police did not conduct an illegal seizure in taking
> him to Area Five for questioning in the instant case.  We also note for the
> record that Koncz recalled the defendant saying on January 21, 1993, that he
> was "more than glad to come out of the joint," indicating that he was not

> seized and brought to Area Five against his will. The trial court's denial of a
> motion to quash arrest will not be disturbed on review absent a finding of
> clear error. People v. Cook, 279 Ill. App. 3d 718, 722, 665 N.E.2d 299
> (1995). Therefore, we affirm the trial court's determination on this issue.

*Id.* at 16-18.

Whether the rejection of Miller's arguments was correct or incorrect, the state courts gave

full and fair consideration to his Fourth Amendment claim, treated it seriously, looked to the

right body of case law, and resolved the claim in an intellectually honest manner. That is all that

*Stone* requires of the state courts. *See Cabrera*, 324 F.3d at 531 (holding that a federal habeas

court faced with a *Stone* issue should not "examine whether the [state] judge seemed to have

done some quality preparation for the hearing or had a perfect understanding of the fine points of

search and seizure law"). Because the state courts satisfied the "full and fair opportunity"

standard, *Stone* precludes this court from considering the merits of Miller's Fourth Amendment

claims. *See Monroe*, 712 F.3d at 1116; *Judkins v. Hardy*, 2013 WL 2156038, at *7-8 (N.D. Ill.

May 17, 2013); *Serio v. Pfister*, 2013 WL 593824, at *3 (N.D. Ill. Feb. 14, 2013).

## II.    *Miranda* **Claim**

Unlike the Fourth Amendment claim, Miller's *Miranda* claim is cognizable on federal

habeas review. *See Withrow v. Williams*, 507 U.S. 680, 686-95 (1993). Although Miller raised

his *Miranda* claim in both the state trial court and the state appellate court on direct appeal, the

Warden contends that Miller procedurally defaulted that claim for purposes of federal habeas

review by failing to present it to the state supreme court. The Warden is correct.

"A procedural default occurs where a habeas petitioner has exhausted his state court

remedies without properly asserting his federal claim at each level of state court review."

*Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted); *see*

*also Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012) ("To preserve a question for federal

collateral attack, a person must present the contention to each level of the state judiciary.").  In

*O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), the Supreme Court held that this principle requires

Illinois state prisoners to fairly present in a PLA to the Supreme Court of Illinois any claims they

wish to press in a federal habeas petition:

> Boerckel's amended federal habeas petition raised three claims that he had
> pressed before the Appellate Court of Illinois, but that he had not included in
> his petition for leave to appeal to the Illinois Supreme Court.  There is no
> dispute that this state court remedy—a petition for leave to appeal to the
> Illinois Supreme Court—is no longer available to Boerckel; the time for filing
> such a petition has long passed.  Thus, Boerckel's failure to present three of
> his federal habeas claims to the Illinois Supreme Court in a timely fashion has
> resulted in a procedural default of those claims.

*Id*. at 848 (citation omitted).  Citing *Boerckel*, the Seventh Circuit has articulated the fair

presentment requirement in this way:

> If the [habeas] claim comes from the Illinois state courts, the petitioner must
> have presented each claim in the habeas petition to the Illinois Appellate
> Court and to the Illinois Supreme Court in a petition for discretionary review.
> As part of this requirement, a petitioner must have fairly presented both the
> operative facts and legal principles that control each claim to the state
> judiciary.  A petitioner's failure to fairly present each habeas claim to the
> state's appellate and supreme court in a timely manner leads to a default of the
> claim, thus barring the federal court from reviewing the claim's merits.

*Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citations omitted); *see also Mulero v.*

*Thompson*, 668 F.3d 529, 535-36 (7th Cir. 2012) (same).  Put somewhat differently, a habeas

petitioner must submit to the state appellate court and state supreme court "both the broad claim

… [and] also the specific arguments and operative facts within that claim."  *McNary v. Lemke*,

708 F.3d 905, 919 (7th Cir. 2013) (internal quotation marks omitted).  Moreover, "the petitioner

must assert his federal claim through one complete round of state-court review, either on direct

appeal or in post-conviction proceedings," meaning that a petitioner may not satisfy *Boerckel* by

presenting a claim to the state appellate court on direct review and the state supreme court on

post-conviction review.  *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009).

Although Miller pressed his *Miranda* argument in the state trial court and state appellate court on direct review, his direct review PLA did not raise that claim; it pressed only Miller's Fourth Amendment claim. Doc. 16-2 at 9-24; *see* Doc. 1 at 2-3 (where Miller's habeas petition implicitly acknowledges that he raised the *Miranda* claim in the appellate court but not in the state supreme court). It follows that the *Miranda* claim is procedurally defaulted. *See Mulero*, 668 F.3d at 535-36; *Smith*, 598 F.3d at 384-85.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (same). These two exceptions are available not only to habeas petitioners who default claims pursuant to an adequate and independent state procedural rule, but also to petitioners like Miller who procedurally default a claim under *Boerckel* by failing to fairly present it to each level of the state judiciary. *See Smith*, 598 F.3d at 382. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) (citations and internal quotation marks omitted). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner

must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Smith*, 598 F.3d at 387-88 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Miller does not invoke the fundamental miscarriage of justice exception, and so that exception will not be discussed. *See Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001) ("As the district court noted, Bell made no effort to argue cause and prejudice in order to avoid this procedural bar. His entire argument was that the procedural default could be bypassed based on [the fundamental miscarriage of justice exception under] *Schlup*. As a result, a cause and prejudice argument was waived."). Miller does, however, appear to invoke the cause-and-prejudice exception to excuse his failure to press his *Miranda* claim through one full round of state court review: "Ground 1 [of the habeas petition, which encompasses Miller's *Miranda* claim,] was dismissed by the post-conviction court after remand from its initial appeal. The court denied petitioner's claim as res judicata in accordance with the State's argument and the previous appellate court decision. A claim dismissed for res judicata is exhausted at this point. U.S. ex rel. Williams v. Brantley, 502 F.2d 1383 (CA7, 1974)." Doc. 1 at 23; *see also* Doc. 1-1 at 2 ("Regarding any waiver issues based upon exhaustion requirements, to comply with exhaustion of state remedies requirement for federal habeas corpus, Illinois prisoner, who had appealed conviction, was not required to appeal dismissal of post-conviction petition, where prisoner had failed to appeal because settled Illinois law indicated that further consideration of issues raised was precluded by doctrine that issues which might have been raised on appeal are waived. U.S. ex rel. Thomas v. Brierton, (N.D. Ill. 1976) 408 F. Supp. 14, aff'd 577 F.2d 746; U.S. ex rel. Williams v. Brantley, (CA7, 1974) 502 F.2d 1383, 1388 (res judicata).")." Miller's apparent invocation of the cause-and-prejudice exception fails for at least two reasons.

First, Miller pressed his *Miranda* claim on direct review, not post-conviction review. Miller's *pro se* post-conviction petition claimed that trial counsel was ineffective for failing to investigate certain evidence regarding his *Miranda* claim. Doc. 16-2 at 27-28. That ineffective assistance claim, however, is distinct from the underlying *Miranda* claim itself. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues. … [T]he fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise."). It follows that the premise underlying Miller's implicit submission that he satisfied the "cause" prong of the cause-and-prejudice standard—that his *Miranda* claim was pressed in his post-conviction petition, rejected by the trial court, and then not pressed on appeal because the trial court rejected the claim on *res judicata* grounds—is incorrect. The state court post-conviction decisions did not even mention Miller's substantive *Miranda* claim, let alone dispose of that claim on *res judicata* grounds. Doc. 1-2 at 22-44. The only mention of *res judicata* in those decisions arose in the context of Miller's argument to the appellate court that the post-conviction trial court had denied certain components of Miller's ineffective assistance claim on *res judicata* grounds. The appellate court rejected that argument: "[C]ontrary to the defendant's assertion, the record clearly indicates that the circuit court did not dismiss the pro se claims based on the doctrine of res judicata, as argued in the State's motion to dismiss, but rather based on the defendant's failure to make a substantial showing of a constitutional deprivation with regard to those claims. Based on the record before us, we reject the defendant's argument that he was denied second-stage review of his pro se claims." Doc. 1-2 at 43.

Second, even if Miller satisfied the "cause" prong of the cause-and-prejudice standard, he has not satisfied the "prejudice" prong. As noted above, "[p]rejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins*, 698 F.3d at 987. Miller's submissions to this court nowhere even attempt to establish prejudice; he does not seek to explain how, in light of the physical evidence admitted at trial, the admission of the statements in question worked to his substantial disadvantage or infected his entire trial with error of constitutional dimension. This failure to address the "prejudice" prong operates as a forfeiture and provides an independent ground for rejecting Miller's attempt to invoke the cause-and-prejudice exception to the procedural default of his *Miranda* claim. *See Aliwoli v. Gilmore*, 127 F.3d 632, 634-35 (7th Cir. 1997) ("As in the district court, Aliwoli does not present any arguments in his appellate brief relating to cause for his default in state court or any prejudice resulting therefrom, and he has failed to establish the necessary prerequisite to our reviewing the merits of his claim.").

## III.    Ineffective Assistance Claim

Miller claims that his trial counsel was ineffective in several respects: (1) for preventing Miller from testifying at trial; (2) for failing to investigate and call Ms. Montanez and her son, Jesus Montanez, as alibi witnesses; and (3) for failing to interview Miller's misdemeanor counsel, James Frymen, and a corrections officer, K. Keith. Doc. 1 at 15-18. The Warden contends that the second and third components of the claim are procedurally defaulted, and that the first component of the claim is meritless. The Warden is correct.

Although ineffective assistance of counsel is a single claim, which means that the court must "assess counsel's performance as a whole," the procedural default rules apply to each

individual argument as to how counsel's assistance fell short. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). Miller does not appear to have presented to *any* level of the state judiciary his arguments that trial counsel was ineffective for failing to investigate or interview Frymen, and he argued only obliquely in the state post-conviction trial court that trial counsel was ineffective for failing to investigate or interview Jesus Montanez. Doc. 16-4 at 72-73. Miller certainly did not press those arguments through one full round of state court review, which results in a procedural default under *Boerckel*. And while Miller did press at some point his argument that trial counsel was ineffective for failing to investigate Ms. Montanez as an alibi witness and corrections officer Keith as a witness regarding the asserted *Miranda* violation, *see* Doc. 1-2 at 25-28, the state appellate court held in its second post-conviction opinion that Miller forfeited those arguments under Illinois procedural rules governing the presentation of claims on appeal, Doc. 1-2 at 44. This adequate and independent state procedural ground for rejecting Miller's arguments procedurally defaults those arguments for purposes of federal habeas review. *See Thompkins*, 698 F.3d at 986-87; *Whitehead v. Cowan*, 263 F.3d 708, 726-27 (7th Cir. 2001); *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999).

The fact that Miller properly preserved a *different* aspect of his ineffective assistance claim (that trial counsel prevented him from testifying at trial) does not excuse his failure to preserve these components of his claim. *See Pole*, 570 F.3d at 935 ("if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted"); *Stevens*, 489 F.3d at 894 ("the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to procedural default"); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994) ("Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness

claims properly presented all conceivable specific variations for purposes of federal habeas review.").  And Miller does not argue that either exception to the procedural default rule applies to those components of his ineffective assistance claim.  Any such arguments accordingly are forfeited.  *See Bivens v. Rednour*, 428 F. App'x 638, 642 (7th Cir. 2011) ("But Bivens does not contend that his default should be excused, and thus has waived any such argument."); *Franklin*, 188 F.3d at 884 ("[P]rocedural default will be excused if a defendant can show that a failure to review the defendant's claims would result in a fundamental miscarriage of justice.  Franklin, however, does not make this argument and we will not make it for him.") (citation omitted); *Tillman v. Robert*, 2013 WL 2156249, at *5 (N.D. Ill. May 17, 2013) (same).

As just noted, Miller preserved his argument that trial counsel rendered ineffective assistance by preventing him from testifying at trial.  Because Miller properly exhausted that component of his ineffective assistance claim, and because the state appellate court adjudicated it on the merits, habeas review is governed by 28 U.S.C. § 2254(d).  "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)."  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (one citation omitted).  Miller does not argue that the state appellate court's ruling was based on an unreasonable determination of the facts.  Rather, as detailed below, he appears to argue (without expressly saying) that the state appellate court's decision was contrary to and an unreasonable application of Supreme Court precedent regarding a criminal defendant's right to testify at trial.

For purposes of § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002); *see also Brown v. Finnan,* 598 F.3d 416, 421-22 (7th Cir. 2010). And for purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785 (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786 (internal quotation marks omitted). Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The state appellate court's resolution of the right-to-testify component of Miller's ineffective assistance claim does not fall short under either the "contrary to" or "unreasonable application" prongs of § 2254(d)(1). The appellate court recognized that "[a] defendant's right to testify at trial is a fundamental constitutional right, as is his or her right to choose not to testify," that although "only the defendant may waive his right to testify, such a decision should be made with the advice of counsel," and that such "advice does not constitute ineffective assistance of counsel unless the evidence establishes that trial counsel refused to allow the defendant to testify." Doc. 1-2 at 38-39. The court held that "in order to make a substantial showing of ineffective assistance of counsel based on the deprivation of the right to testify, a

defendant must allege that, when the time came for him to testify, he told his lawyer that he

wanted to do so, despite advice to the contrary." *Id*. at 39. And the court found that the Miller

failed to make that showing because his evidence did not "indicate with any specificity the time

frame during which [Miller] allegedly informed his attorney that he desired to testify," and

because "none of [Miller's] allegations assert[] that, when the time came for him to testify,

[Miller] told his lawyer that he wanted to do so." *Id*. at 39-40.

In arguing that the state appellate court's decisions falls short under § 2254(d)(1), Miller

states: "[T]he post-conviction court utilized the earlier outspokenness of the petitioner, not the

clear silence of the record at trial[,] to foreclose relief without a [third-stage] hearing. It is this

silence of the record that proves his right to testify has not been honored by trial counsel or

presumptively waived by the petitioner himself as the court ruled." Doc. 1 at 17. Miller adds:

> The [state appellate] court ruled that because the defendant did not make
> a contemporaneous objection part of the record at trial, he had therefore
> waived his right to testify on his own behalf. But the Supreme Court of the
> United States has not made that an absolute bar. What the High Court has
> said is that the accused has the ultimate authority to make certain fundamental
> decisions regarding the case, as to whether to plead guilty, waive a jury,
> testify in his or her own behalf, or to take an appeal. What the Court has not
> made is the presumptive waiver of these four fundamental trial rights. These
> above all else are to be guarded by counsel, and afforded the client.

> *       *       *

> Here, the [state appellate] court forces upon the petitioner a rule that
> completely dilutes his right to testify. This the Framers did not envision and
> the Supreme Court did not encompass when it found that the right to choose to
> testify was a fundamental right only the "defendant" had a right to decide.

> As such, a rule creating a presumptive waiver of petitioner's
> fundamental rights is against the Supreme Court's precedent. To allow such a
> rule would provide counsel and the State with an unlimited ability to remain
> unchecked and dissolve any right.

Doc. 1-1 at 8-11 (citations omitted). To support his submission, Miller cites *Jones v. Barnes*, 463 U.S. 745 (1983); *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring); *Rock v. Arkansas*, 483 U.S. 44 (1987); *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975); *Ferguson v. Georgia*, 365 U.S. 570, 602 (1961) (Clark, J., concurring), and other cases.

At most, the Supreme Court decisions cited by Miller establish that criminal defendants have the right to decide for themselves whether they will testify at trial. *See Rock*, 483 U.S. at 52-53 ("The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. In *Harris v. New York,* 401 U.S. 222, 230 (1971), the Court stated: 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so.' *Id.,* at 225, 91 S. Ct., at 645."); *Jones*, 463 U.S. at 751 ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, [and] testify in his or her own behalf"). In none of those decisions, however, did the Supreme Court address whether a trial lawyer renders ineffective assistance where, as here, the defendant did not make a contemporaneous assertion of his right to testify—that is, where the defendant did not communicate to the lawyer or to the court, when the time came for him to testify, a desire to testify. Given this lack of clearly established Supreme Court precedent, the state appellate court's rejection of the right-to-testify component of Miller's ineffective assistance claim does not fall below the bar established by § 2254(d)(1). *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("[g]iven the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that … the state court's decision"—which held that buttons displaying the victim's image worn by the victim's family during the habeas petitioner's trial did not deny the petitioner his right to a fair trial—was "contrary to or an unreasonable application of clearly established federal law.");

*Arrendondo v. Huibregtse*, 542 F.3d 1155, 1168-70 (7th Cir. 2008) (rejecting a habeas petitioner's argument that the state court's decision unreasonably applied *Rock v. Arkansas*, *supra*, where "no holding of the Supreme Court *required* the Wisconsin appellate court to apply *Rock*'s balancing test to these circumstances").

This conclusion finds support in, and in fact is compelled by, *Thompson v. Battaglia*, 458 F.3d 614 (7th Cir. 2006). The habeas petitioner in *Thompson* argued "that his trial counsel denied him the right to testify in his own defense, stating in an affidavit that 'I [] told my attorney I wanted to testify when I saw how twisted things were coming out [at the trial].'" *Id.* at 619 (alterations in the original). The state appellate court rejected the petitioner's argument, reasoning that the petitioner's "waiver of the right to testify is presumed because he failed to testify or notify the court of his desire to do so." *Ibid.* The petitioner argued on federal habeas review "that the equation of silence with waiver constitutes an error of law." *Ibid*.

In rejecting the petitioner's argument, the Seventh Circuit acknowledged that "[a] criminal defendant's right to testify is 'a fundamental constitutional right.'" *Ibid.* (quoting *Rock*, 483 U.S. at 53 n.10). The Seventh Circuit added, however, that "[w]hether silence alone should be presumed to be a waiver is a more difficult question," and noted that different courts had imposed different standards for evaluating whether trial counsel has deprived a criminal defendant of his right to testify. *Ibid.* The Seventh Circuit concluded that because "[t]he variety in practice among the state courts and the various federal courts shows … that there is no standard clearly established by the Supreme Court of the United States that is binding on all," habeas relief was barred by § 2254(d)(1). *Ibid.* There is no principled basis to distinguish this case from *Thompson*. *See Garcia v. Acevado*, 2009 WL 537069, at *9 (N.D. Ill. Mar. 4, 2009) (citing *Thompson* in rejecting a comparable ineffective assistance claim).

**Conclusion**

Because Miller's habeas claims are non-cognizable, procedurally defaulted, or meritless, his petition is denied. Rule 11(a) of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court declines to issue a COA.

The Supreme Court has described the standard applicable to cases, like this one, in which certain habeas claims are denied on procedural grounds:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. … Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Such a circumstance is present here. This court's determinations that Miller procedurally defaulted his *Miranda* claim and portions of his ineffective assistance claim rely on the contents of the state appellate court decisions, on the contents of Miller's briefs, and on settled precedent requiring that a petitioner fairly present claims to each level of the state judiciary. The application of that settled law to Miller's case does not present difficult or close questions, and so the procedurally defaulted claims do not meet the standard for granting a COA.

The following standard applies where habeas claims are denied on non-procedural grounds:

> To obtain a COA under § 2253(c), a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack*, 529 U.S. at 483-84 (internal quotation marks omitted). This court's denials of Miller's Fourth Amendment claim and the right-to-testify component of his ineffective assistance claim rely on settled precedent regarding the treatment of such claims on habeas review. The application of that law to those claims does not present difficult or close questions, and so those claims do not meet the standard for granting a COA.

July 24, 2013

_____
United States District Judge